**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

PATRICK ROBINSON,

    Plaintiff,

       v.

NORTH AMERICAN COMPOSITES,

    Defendant.

Civil No. 15-8702 (RMB/AMD)

**OPINION**

APPEARANCES:

David M. Koller, Esq.
Koller Law, LLC
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
    *Attorney for Plaintiff Patrick Robinson*

Christine Grady Derewicz, Esq.
Sarah Bryan Fask, Esq.
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
    *Attorneys for Defendant North American Composites*

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon the Motion for
Summary Judgment [Docket No. 16] by Defendant North American
Composites ("NAC" or the "Defendant"), seeking the dismissal of
the above-captioned action by Plaintiff Patrick Robinson (the
"Plaintiff"). Having considered the parties' submissions, and

for the reasons set forth below, Defendant's Motion for Summary
Judgment is granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

This litigation stems from a series of union grievances
filed by Plaintiff over the course of his employment with NAC, a
national distributor of composite raw materials and equipment.
Def. SOMF ¶ 1.  Plaintiff has been employed by NAC or its
predecessors since approximately May 2004 and continues to work
for NAC as a warehouse worker to this day.  Def. SOMF ¶¶ 8-9.
By all accounts, Plaintiff is a hardworking and qualified
employee.  He has never been reprimanded or disciplined during
his employment with NAC.  Id. ¶ 23.  He serves as the union
steward for the warehouse workers' union and represents the
union in collective bargaining sessions.  Id. ¶¶ 25-26.
Plaintiff earns a higher hourly wage than most other warehouse
workers.  Id. ¶¶ 19, 27.  Plaintiff's performance reviews have
described him as a "hardworking, dependable employee" who
"exceeds expectations."  Id. ¶ 34.

Plaintiff, however, filed five union grievances with NAC
between April 2013 and July 2014.  In these grievances,

---

[1] To the extent that the parties agree on particular facts,
the Court relies upon Defendant's Statement of Undisputed
Material Facts ("Def. SOMF") [Docket No. 16-2] and Plaintiff's
Response to Defendant's Statement of Undisputed Material Facts
("Pl. Resp. SOMF") [Docket No. 22]. The Court will rely upon the
record for disputed facts.

Plaintiff claimed that his former supervisor, Steve Privitera, made racially-motivated comments on several occasions and discriminated against Plaintiff on the basis of race in assigning work amongst warehouse workers and in applying NAC's vacation policy.  Def. SOMF ¶¶ 56-65, 87, 90, 94, 107, 116. Plaintiff is African-American.  Id. ¶ 7.  NAC has denied each grievance and the union has subsequently declined to pursue the grievances further.  Id. ¶¶ 82, 92-93, 105-06, 114-15, 121-22. Plaintiff did not, at any time, report his allegations to NAC utilizing NAC's non-discrimination and anti-harassment policies. Id. ¶ 66.

NAC's non-discrimination policy specifically forbids discrimination against an individual because of his or her race. Id. ¶ 5.  Similarly, NAC's anti-harassment policy prohibits racially-motivated harassment.  Id. ¶ 6.  The policy also informs employees of their "right to report [any] violation to the Company.  Violations should always be reported to the HUMAN RESOURCES DEPARTMENT."  Id. (capitalization in original). Plaintiff received a copy of NAC's employee handbook, which includes these policies, in 2007, and knew that he had the ability to report any complaints of harassment or discrimination to NAC's Human Resources Department.  Id. ¶¶ 14-15.

In 2012, Plaintiff asked to meet with the operations supervisor, Hugo Nieves, to whom Privitera reported.  Plaintiff

wished to raise "a lot of issues that [he] had with [Privitera]." Id. ¶ 41. All of the warehouse workers and the drivers' supervisor also participated in Plaintiff's meeting with Nieves. Id. ¶ 42. During the meeting, Plaintiff told Nieves that Privitera did not treat Plaintiff and Mike Blackwell, another African-American warehouse worker, fairly and made racial comments and jokes. Pl. Dep. 99:10-100:14, Def. Ex. C [Docket No. 16-4]. Plaintiff also claimed that Privitera treated Robinson and Blackwell differently than other workers because they are African-American. Pl. Resp. SOMF ¶ 44. Additionally, Plaintiff reported that Privitera allowed other warehouse workers to work less than Plaintiff and Blackwell and that Privitera watched him and Blackwell more than other employees. Def. SOMF ¶¶ 46-47. Plaintiff did not claim, however, that the alleged unfair division of labor was motivated by race. Id. ¶ 48. Other employees at the meeting also had complaints about Privitera, though none were related to race or racial animus. Id. ¶¶ 49-50. Plaintiff does not recall raising concerns about racism to Nieves in subsequent meetings. Pl. Resp. SOMF ¶¶ 53-55.

On April 15, 2013, Plaintiff filed a grievance through his union, claiming that Privitera assigned Plaintiff and Blackwell more work than warehouse workers who were not African-American, and that Privitera only raised his voice and was disrespectful

to African-American employees.  Def. SOMF ¶¶ 56-57.  The grievance also alleged five racially-motivated comments made by Privitera at unspecified times.  At some point prior to the grievance, while another employee, Blackwell, was eating a banana, Privitera asked if that was part of "Barack's stimulus program."  Two weeks later, while eating a banana, Privitera smiled and said he was impersonating Obama.  On another occasion, when NAC's Brother fax machine malfunctioned, Privitera commented that "you can't rely on a brother."  On another date, when Blackwell's brother visited, Privitera asked, "What Pookie want?," an apparent reference to an African-American character in the movie New Jack City. Plaintiff also claimed that Privitera called tall African-American men in the warehouse "Big John Coffey," in reference to an African-American character in the movie The Green Mile.  Id. ¶¶ 58-65.  Plaintiff did not report any of these comments to Human Resources or any NAC supervisor, including Nieves, before filing the grievance because he thought nothing would be done if he complained.  Id. ¶ 66-67.

On April 24, 2013, Karen Johansen, NAC's Human Resources Generalist, began an investigation into Plaintiff's grievance. Pl. Resp. SOMF ¶¶ 73-75.  She interviewed several NAC employees as part of the investigation and, ultimately, concluded that Privitera did not violate NAC's anti-harassment or

anti-discrimination policies or the law.  Def. SOMF ¶¶ 75-76.
She also determined that Plaintiff's claims that Privitera
unfairly distributed work amongst the warehouse workers were
meritless.  Johansen Decl. ¶ 6, Def. Ex. M [Docket No. 16-6].
Johansen did, however, determine that Privitera's comments were
"inappropriate and unprofessional" and disciplined Privitera.
Def. SOMF ¶¶ 78-79.  She prepared a comprehensive summary of her
investigation and findings and provided it to Plaintiff.  Id.
¶ 80.  The grievance was denied.  Id. ¶ 82.  Privitera did not
make any racially-insensitive comments after Plaintiff filed his
April 15, 2013 grievance.  Id. ¶ 81.

The vacation policy set forth in the Collective Bargaining
Agreement between NAC and the warehouse workers' union provides
that "the Company reserves the right to determine the number of
Employees who are on vacation at any one time."  Id. ¶ 20.
Generally, NAC permits only one warehouse worker to take
vacation at a time.  Id. ¶ 21.  At times, however, having more
than one warehouse worker on vacation at a time does not put NAC
in jeopardy of missing business orders, as NAC's business is
cyclical.  Id. ¶ 22.

Shortly before Thanksgiving 2013, Plaintiff attempted to
change his previously-scheduled vacation days so that he would
be out at the same time as Blackwell around the Thanksgiving
holiday.  Id. ¶ 83.  Privitera notified Nieves of Plaintiff's

vacation request, which Nieves considered and then denied because of NAC's business demands. Id. ¶ 85. Blackwell, however, was permitted to take this vacation time, as he had his vacation scheduled first. Id. ¶ 84. Thereafter, Blackwell and another warehouse worker, Jaram Maldonado, were permitted to take the same vacation days off after Christmas because the business demands permitted. Id. ¶ 86.

On December 27, 2013, Plaintiff filed another union grievance complaining that he and Blackwell were not permitted to take off the same vacation days around Thanksgiving, but that Maldonado and Blackwell were permitted to do so around Christmas. Id. ¶ 87. Plaintiff alleged that NAC's decision to allow Maldonado and Blackwell, a Caucasian employee and an African-American employee, off together, but not two African-American employees, was racially motivated. Id. ¶ 90. Plaintiff testified at his deposition that he did not know who made the decision to deny his Thanksgiving 2013 vacation request, but that if Nieves had made the decision, it would not necessarily have been racially-motivated. Id. ¶ 91. NAC denied the grievance on the basis of its vacation policy and the union declined to pursue it further. Id. ¶¶ 92-93.

On March 20, 2014, Plaintiff filed a third union grievance, alleging that Privitera did not assign one particular type of work assignment evenly among the warehouse workers and that,

because Maldonado refused to perform certain tasks, Privitera divided the work among Maldonado, Robinson, and Blackwell. Id. ¶ 107. Nieves held a meeting to address the grievance. At the meeting, he discussed work assignments and the fact that the supervisor has the right to assign work to any employee, as required by business needs. Id. ¶ 112. He also asked Privitera to personally assign work tasks to all employees if they tried to avoid any tasks. Id. ¶ 113. Thereafter, NAC denied Plaintiff's grievance, citing the collective bargaining agreement, and the union declined to pursue the grievance any further. Id. ¶¶ 114-15.

On May 27, 2014, Plaintiff filed another union grievance about vacation approvals. Id. ¶ 94. In December 2013, Plaintiff submitted a request for vacation days in May 2014, which NAC approved. Id. ¶¶ 95-96. Subsequently, in March 2014, another employee, Jeff Paxton, requested the same days off. Id. ¶ 97. Privitera approved Paxton's vacation request, apparently not realizing that it overlapped with Plaintiff's previously-approved vacation. Nieves Decl. ¶¶ 17-18, Def. Ex. A [Docket No. 16-4]. When Nieves realized that two employees had been approved to take off the same days, he spoke with Paxton, who informed Nieves that he had scheduled a prepaid vacation. Def. SOMF ¶¶ 99-100. Nieves determined it would be unfair to require Paxton to cancel his vacation because of NAC's oversight

and permitted him to take his vacation days. Id. ¶ 101.
Plaintiff's grievance does not mention race; instead, Plaintiff
argued that Paxton should have been forced to cancel his
vacation. Id. ¶¶ 103-04. NAC responded to the grievance,
admitting that it had made a scheduling mistake and advising
Plaintiff that the issue had been addressed with the supervisor.
The union declined to pursue the grievance any further. Id.
¶¶ 105-06.

In July 2014, Plaintiff filed his fifth grievance, again
alleging that Maldonado was permitted to do less work than
Robinson and Blackwell. Id. ¶ 116. The grievance does not
mention race, although Plaintiff now contends in this litigation
that the allegedly unfair distribution of work assignments was
racially discriminatory. Id. ¶¶ 117-18. NAC denied this
grievance, again citing its rights under the collective
bargaining agreement, and the union declined to pursue the
grievance any further. Id. ¶¶ 121-22. On July 18, 2014,
Plaintiff also filed a complaint with the New Jersey Division on
Civil Rights ("NJDCR") and the Equal Employment Opportunity
Commission ("EEOC") regarding his various grievances against
Privitera. Id. ¶ 129.

On March 14, 2016, NAC terminated Privitera's employment.
Id. ¶ 127. Plaintiff admits that he has not experienced any
discrimination at NAC since Privitera's termination. Id. ¶ 128.

Based upon these facts, Plaintiff claims that he has been discriminated against based upon his race and that he has been forced to endure a hostile work environment. On November 2, 2015, Plaintiff commenced the instant litigation in the Superior Court of New Jersey, Law Division, Atlantic County, setting forth the following counts: violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12 (Count I); race discrimination – disparate treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e, et seq. (Count II); and race discrimination – hostile work environment in violation of Title VII (Count III). Complaint, Notice of Removal Ex. A [Docket No. 1]. Defendant subsequently removed the action to federal court on December 16, 2015 [Docket No. 1]. Defendant now moves for summary judgment and dismissal of Plaintiff's Complaint in its entirety.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corps., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Furthermore, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth

specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). The nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

## III. ANALYSIS

### A. Race Discrimination

Title VII and NJLAD prohibit employment discrimination on the basis of race, as well as certain other protected characteristics. 42 U.S.C. § 2000e-2; N.J.S.A. § 10:5-12(a). "All retaliation and discrimination claims brought under Title VII and the NJLAD, including those based on sex, race, and disability, which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 841 (3d Cir. 2016); see also Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 546 (2013) ("All LAD claims are evaluated in accordance

with the United States Supreme Court's burden-shifting mechanism.").

Under this burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination. Terry v. Borough, 660 F. App'x 160, 163 (3d Cir. 2016) (quoting Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)). Then "[i]f the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [employment action]." Id. (quoting Jones, 198 F.3d at 410). "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (quoting Jones, 198 F.3d at 410).

### i. Prima Facie Case

To establish a prima facie case of disparate treatment on the basis of race under Title VII and NJLAD, a plaintiff must show the following: "(1) he belongs to a protected class; (2) he is qualified for the position; (3) he suffered some form of adverse employment action; and (4) the adverse employment action occurred under some circumstances that give rise to an inference of unlawful discrimination." Stewart v. Union Cty. Bd. of Educ., 655 F. App'x 151, 155 (3d Cir. 2016) (citing St. Mary's

Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas, 411 U.S. at 802).

The parties do not dispute that Plaintiff, as an African-American employee, is a member of a protected class. Additionally, the parties do not contest that Plaintiff is qualified for the position he holds. Indeed, Plaintiff has consistently earned positive performance evaluations and continues to work for NAC. The parties' dispute centers on the final two elements. Defendant contends that Plaintiff did not suffer any actionable adverse employment actions and that there is no evidence in the record that gives rise to an inference of unlawful discrimination.

Defendant argues that Plaintiff's discrimination claims must be dismissed as Plaintiff did not suffer any actionable adverse employment actions. Plaintiff has never been reprimanded or disciplined during his employment with NAC. Def. SOMF ¶ 23. He has received generally positive performance evaluations. Id. ¶ 34. He has not been subject to any reductions in pay or benefits and, in fact, earns an hourly wage above that set forth in the relevant collective bargaining agreement. Id. ¶ 27. Moreover, Plaintiff has not been discharged and continues to work at NAC. Id. ¶ 9.

Plaintiff's discrimination claims are instead based upon the denial of his request for vacation around Thanksgiving 2013 and allegedly unfair division of labor. Defendant contends that these are insufficient bases for Plaintiff's discrimination claims as they do not rise to the level of adverse employment actions that are actionable under Title VII or NJLAD.

Not every unwelcome employment decision is actionable. Instead, "[a]n actionable adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Betts v. Summit Oaks Hosp., --- F. App'x ----, 2017 WL 1506640, at *2 (3d Cir. Apr. 27, 2017) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Stated differently, an adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 234 (3d Cir. 2016) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).

The Court first considers the denial of Plaintiff's request for vacation around Thanksgiving 2013. The Court agrees with Defendant that the denial of one vacation request is simply not serious and tangible enough to materially alter Plaintiff's

compensation, terms, conditions, or privileges of employment.
There is no evidence that this single instance of denied
vacation time impacted Plaintiff's compensation, benefits, or
terms, conditions, or privileges of employment in any way
whatsoever.  Importantly, this was not part of a pattern of
denying Plaintiff's vacation requests.  Plaintiff requested and
was granted vacation days on other occasions without issue.
Def. SOMF ¶¶ 95-96.  The denial of a singular request for
vacation does not constitute an actionable adverse employment
action that may support a discrimination claim under Title VII
or NJLAD.  See, e.g., Fraternal Order of Police, Lodge 1 v. City
of Camden, 842 F.3d 231, 241 (3d Cir. 2016) (affirming district
court's determination that cancellation of vacation is not an
adverse employment action); Mieczkowski v. York City Sch. Dist.,
414 F. App'x 441, 445-47 (3d Cir. 2011) (affirming district
court's determination that plaintiff had not suffered adverse
employment actions where, among other things, plaintiff was
"arbitrarily asked to cancel vacation days"); Viggiano v. State
of New Jersey, 136 F. App'x 515, 518 (3d Cir. 2005) (finding
that plaintiff suffered no adverse employment actions where
defendant "den[ied] him time off for personal and medical
reasons"); Tucker v. Merck & Co., 131 F. App'x 852, 857 (3d Cir.
2005) (holding that requiring employee to take vacation day

rather than personal day did not constitute an adverse
employment action).

The Court next turns to Plaintiff's contention that he was
assigned more work than certain other warehouse workers who are
not African-American.  As a preliminary matter, the Court agrees
with Defendant that there is no evidence in the record to
support this alleged inequitable division of labor.  Orsatti, 71
F.3d at 484 (plaintiff "must point to concrete evidence in the
record" to raise genuine issue of fact on summary judgment).
Plaintiff presents only his subjective belief that certain
workers did not work as hard as he did, resulting in Privitera
assigning Plaintiff more work.[2]  Plaintiff's speculation and
conjecture is insufficient to defeat summary judgment.  Acumed,
561 F.3d at 228; see also Farzan v. Vanguard Grp., Inc.,

---

[2] Plaintiff relies, in part, upon his purportedly
contemporaneous journal entries to support his claims.  Pl. Opp.
Ex. A [Docket No. 23-1].  Defendant challenges the admissibility
of these entries on the bases of authenticity and hearsay.
"[T]he rule in this circuit is that hearsay statements can be
considered on a motion for summary judgment if they are capable
of being admissible at trial. . . . The proponent need only
explain the admissible form that is anticipated." Fraternal
Order of Police, 842 F.3d at 238 (internal citations and
quotations omitted) (emphasis in original).  Plaintiff has made
no attempt to do so.  While the Court harbors concerns about the
admissibility of Plaintiff's journal entries, the Court makes no
ruling on their admissibility at this juncture because, even if
admissible, the journal entries do not raise a genuine dispute
of material fact as to whether Plaintiff suffered an actionable
adverse employment action or discrimination.  They merely
reiterate Plaintiff's subjective belief that he worked harder
than other workers.

582 F. App'x 105, 108 (3d Cir. 2014) (citing with approval

Fane v. Locke Reynolds, LLP, 480 F.3d 534, 539 (7th Cir. 2007)

(holding that employee's subjective belief that her workload was

greater than other similarly situated employees was insufficient

to establish disparate treatment)).

    Even assuming that Plaintiff's subjective belief that he

was assigned more work is true, the Court nonetheless finds that

an increase in workload alone does not constitute an actionable

adverse employment action.  There is no allegation, let alone

evidence, that any increased workload resulted in a serious and

tangible alteration of Plaintiff's conditions or terms of

employment.  Generally, increased duties or workload do not

alone constitute adverse employment actions for purposes of

establishing discrimination claims.  See, e.g., Betts, 2017 WL

1506640, at *2 (finding that lateral transfer to position that

"[did] the work of five people" was not an adverse employment

action as it had no "tangible impact on [plaintiff's]

employment" and plaintiff's "title, pay, benefits, and terms of

employment remained the same"); Rosetsky v. Nat'l Bd. of Med.

Examiners of U.S., Inc., 350 F. App'x 698, 701 (3d Cir. 2009)

(finding that "neither [plaintiff's] dissatisfaction with work

assignments, nor assignment of clerical duties, . . . rise to

the level of the sort of materially adverse significant change

in employment status required for a cause of action under the

[Age Discrimination in Employment Act].”); <u>Fitzgerald v. Shore Mem'l Hosp.</u>, 92 F. Supp. 3d 214, 240-41 (D.N.J. 2015) (finding that "heavier workloads" did not "rise to the level of an 'adverse employment action'").

Finally, even if Plaintiff had suffered adverse employment actions, Plaintiff has nonetheless failed to show that any alleged adverse employment actions occurred under circumstances that give rise to an inference of unlawful discrimination, as required to establish a prima facie case. Plaintiff admits that, other than Privitera, no one at NAC, including Nieves, harbored any racially-motivated animus towards him. Pl. Resp. SOMF ¶ 24. He also admits that "<u>Nieves</u> considered and then denied [Plaintiff's vacation request in November 2013], <u>because</u> of NAC's business demands." <u>Id.</u> ¶ 85 (emphasis added). Moreover, Plaintiff testified that if Nieves made the decision to deny his vacation request, that decision would "not necessarily" have been racially-motivated. <u>Id.</u> ¶ 91. Additionally, NAC investigated Plaintiff's union grievance related to the vacation denial and found that it was consistent with NAC's vacation policy. Finally, as explained above, Plaintiff's subjective belief that he was assigned more work due to his race is unsupported by any concrete evidence in the record and, standing alone, is insufficient to establish the fourth element of the prima facie case. <u>See</u> <u>Holmes v. Newark</u>

Pub. Sch., 2016 WL 3014404, at *9 (D.N.J. May 25, 2016)

(granting summary judgment, in part, because plaintiff

"ground[ed] his claims of discrimination and retaliation in

unsupported, self-serving allegations" only, rather than

"evidence from which a reasonable jury could find that these

purported adverse actions were tied to any protected

characteristic or conduct.").

Based on the undisputed record before the Court, it is

clear that Plaintiff has suffered no adverse employment action

that was "serious and tangible enough to alter [his]

compensation, terms, conditions, or privileges of employment."

Fiorentini, 665 F. App'x at 234.  Furthermore, there is no

evidence in the record that could establish that any adverse

employment actions occurred under some circumstances that give

rise to an inference of unlawful discrimination.  For these

reasons, Plaintiff has failed to establish a prima facie case of

race discrimination under Title VII and NJLAD.  Accordingly,

Defendant's Motion for Summary Judgment is granted as to

Plaintiff's race discrimination claims based on disparate

treatment (Counts I, II).

### ii. Legitimate Non-Discriminatory Reasons

Even if Plaintiff were able to establish a prima facie case

of discrimination based upon certain adverse employment

decisions, under the McDonnell Douglas framework, the burden

would then shift to Defendant to articulate a legitimate non-retaliatory reason for its actions. Terry, 660 F. App'x at 163 (quoting Jones, 198 F.3d at 410); see also McDonnell Douglas, 411 U.S. at 802.[3]

Defendant contends that it denied Plaintiff's request for vacation in November 2013 in accordance with its established vacation policy. Pursuant to the policy, NAC typically permits only one warehouse worker off on vacation at a time, so that it is able to meet its business demands. At the time Plaintiff requested vacation around Thanksgiving 2013, another warehouse worker, Blackwell, was already scheduled to be on vacation. Due to NAC's business demands at the time, NAC could not have two warehouse workers out on vacation at the same time and, therefore, denied Plaintiff's request. Plaintiff admits that "Privitera notified Nieves of [Plaintiff's] request, which Nieves considered and then denied, because of NAC's business demands." Pl. Resp. SOMF ¶ 85. Defendant has also explained that, at other times, when its cyclical business is not as demanding, it will permit two warehouse workers to take vacation

---

[3] As there is no evidence in the record that Privitera required Plaintiff to perform more work than other workers, "NAC has no legitimate non-discriminatory reason justifying its non-existent 'adverse employment action.'" Def. Br. at 22 n. 13 [Docket No. 16-1]. The Court agrees that there is no need to proceed to the next step as to this purported action.

on the same days.   Def. SOMF ¶¶ 22, 86.   Plaintiff does not

dispute this.   Pl. Resp. SOMF ¶¶ 22, 86.

The Court finds that Defendant has carried its burden of

articulating a legitimate non-discriminatory reason for denying

Plaintiff's vacation request in November 2013.

### iii. Pretext

As NAC has articulated a legitimate, non-discriminatory

reason for its denial of Plaintiff's request for vacation time

in November 2013, the burden shifts back to Plaintiff to

establish that the proffered reason is merely pretext for

discrimination.   Terry, 660 F. App'x at 163 (quoting Jones,

198 F.3d at 410).

A plaintiff can demonstrate pretext and, therefore,

withstand a motion for summary judgment by "point[ing] to some

evidence, direct or circumstantial, from which a factfinder

could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or

determinative cause of the employer's action." Fuentes v.

Perskie, 32 F.3d 759, 764 (3d Cir. 1994); accord Simpson v. Kay

Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir.

1998).   To establish pretext, "[t]he plaintiff 'cannot simply

show that the employer's decision was wrong or mistaken' but

rather 'must demonstrate such 'weaknesses, implausibilities,

inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons.'" <u>Daniels v. Sch. Dist. of Philadelphia</u>, 776 F.3d 181, 199 (3d Cir. 2015) (quoting <u>Ross v. Gillhuly</u>, 755 F.3d 185, 194 n. 13 (3d Cir. 2014) (quoting <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 331 (3d Cir. 1995))).

"[S]ummary Judgment is essentially 'put up or shut up' time for the non-moving party." <u>Wiest v. Tyco Elecs. Corp.</u>, 812 F.3d 319, 330 (3d Cir. 2016) (quoting <u>Berckeley Inv. Group, Ltd. V. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006)).  Yet, perplexingly, Plaintiff does not even attempt to establish pretext or otherwise challenge Defendant's proffered legitimate non-discriminatory reason for denying his vacation request in November 2013.  Indeed, as Defendant points out, "the word 'pretext' appears nowhere in [Plaintiff's] opposition brief." Def. Reply Br. at 2 [Docket No. 24].  Plaintiff readily admits that his vacation request was denied "<u>because</u> of NAC's business demands."  Pl. Resp. SOMF ¶ 85 (emphasis added).

This Court is "not required to scour the record to make the case of a party who did nothing." <u>United States v. Stevenson</u>, 832 F.3d 412, 421 (3d Cir. 2016) (internal quotations,

citations, modifications omitted); accord Perkins v. City of
Elizabeth, 412 F. App'x 554, 555 (3d Cir. 2011) ("a court is not
obliged to scour the record to find evidence that will support a
party's claims."); Dawley v. Erie Indem. Co., 100 F. App'x 877,
881 (3d Cir. 2004) ("Rule 56 does not oblige a district court to
scour the entire record to find a factual dispute."back).
Accordingly, even if the denial of Plaintiff's request for
vacation in November 2013 constituted an adverse employment
action for purposes of Plaintiff's Title VII and NJLAD claims,
which it does not, Plaintiff has failed to meet his burden of
establishing that Defendant's legitimate non-discriminatory
reason for the denial is mere pretext.  For this additional
reason, Defendant's Motion for Summary Judgment is granted as to
Plaintiff's race discrimination claims under Title VII and NJLAD
(Counts I, II).

### B. Hostile Work Environment

Defendant urges the Court to grant summary judgment in its
favor on Plaintiff's hostile work environment for three reasons.
First, Defendant argues that Plaintiff's hostile work
environment claims are barred by the applicable statutes of
limitations.  Second, even if the claims were not time-barred,
Defendant contends that the alleged hostile conditions were
insufficiently severe and pervasive to constitute a hostile work
environment.  Finally, Defendant argues that it is protected

from liability by the <u>Faragher-Ellerth</u> affirmative defense.  The Court considers each of these arguments in turn.

### i. Statute of Limitations

Prior to pursuing a Title VII claim in court, a plaintiff must first exhaust all required administrative remedies.  <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 163 (3d Cir. 2013).  To do so, a charge of unlawful employment practices must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful practice or within 300 days, if the complainant first filed a charge with the corresponding state agency.  42 U.S.C. § 2000e-5(e)(1).  These deadlines are treated as a statute of limitations.  <u>See</u> <u>Mandel</u>, 706 F.3d at 165.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  <u>Id.</u> (quoting <u>Morgan</u>, 536 U.S. at 113).  Additionally, although not a prerequisite to bringing a claim under NJLAD in court, any complaint filed with the NJDCR must be filed within 180 days of the alleged discrimination.  N.J.S.A. § 10:5-18.  Moreover, NJLAD claims are subject to a two-year statute of limitations.  <u>Montells v. Haynes</u>, 133 N.J. 282, 294-95 (1993).  This two-year statute of limitations is not tolled by the filing of an administrative claim.  <u>Omogbehin v. Dimensions Int'l, Inc.</u>, 2009 WL 2222927, at *3 (D.N.J. July 22, 2009).

Each of the alleged racially discriminatory or harassing comments made by Privitera occurred prior to Plaintiff's April 15, 2013 grievance. Yet Plaintiff did not file a charge of discrimination with the NJDCR or the EEOC until July 18, 2014. Def. SOMF ¶ 129. This is well outside the 300-day period specified by Title VII and the 180-day period specified by NJLAD. Additionally, Plaintiff filed the instant litigation in state court on November 2, 2015, two and a half years after Plaintiff filed his grievance in April 2013. Accordingly, the Court finds that Plaintiff's hostile work environment claims are barred by the applicable statutes of limitations. Summary judgment is granted as to Plaintiff's hostile work environment claims under Title VII and NJLAD (Counts I, III).[4]

### ii. Severity of Conduct

Even if Plaintiff's hostile work environment claims were not time-barred, Defendant argues that the undisputed record establishes that Plaintiff was not subjected to a hostile work environment. "[T]he sine qua non of a hostile environment claim is 'a workplace . . . permeated with discriminatory

---

[4] Plaintiff contends that, although Privitera's racist comments stopped in April 2013, Privitera continued to harass him by, for example, assigning him more work than other warehouse workers. As the Court explained above, however, there is no evidence in the record to support Plaintiff's claims that he was assigned more work than other warehouse workers on the basis of his race or that Privitera took any other racially-motivated actions against Plaintiff.

intimidation, ridicule, and insult, that is sufficiently severe
or pervasive to alter the conditions of the victim's employment
and create an abusive working environment[.]'" McKinnon v.
Gonzales, 642 F. Supp. 2d 410, 421 (D.N.J. 2009) (emphasis in
original) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536
U.S. 101, 116 (2002)). Accordingly, to establish a hostile work
environment claim against an employer, a plaintiff must prove:
(1) the employee suffered intentional discrimination on the
basis of race; (2) the discrimination was pervasive and regular;
(3) the discrimination detrimentally affected the plaintiff;
(4) the discrimination would detrimentally affect a reasonable
person who belonged to the same protected class; and (5) the
existence of respondeat superior liability. Huston v. Procter &
Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).

    In determining whether an environment is hostile, "a court
must consider the totality of the circumstances, including 'the
frequency of the discriminatory conduct; its severity; whether
it is physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance.'" Mandel, 706 F.3d at 168 (quoting
Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).
"Title VII is not intended as a 'general civility code,' and
requires that 'conduct must be extreme' to constitute the kind
of 'change in the terms and conditions of employment' the

statute was intended to target." Burgess v. Dollar Tree Stores, Inc., 642 F. App'x 152, 155 (3d Cir. 2016) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); see also Vance v. Ball State Univ., 133 S. Ct. 2434, 2455 (2013) (Ginsburg, J., dissenting) ("Title VII imposes no 'general civility code.' It does not reach 'the ordinary tribulations of the workplace,' for example, 'sporadic use of abusive language' or generally boorish conduct.") (internal citations omitted).

Plaintiff's hostile work environment claims are premised upon the five racially-motivated comments allegedly made by Privitera, which Plaintiff complained about in his April 2013 union grievance. In his deposition, Plaintiff also testified that another employee told him that, on unspecified occasions, Privitera used racial epithets regarding African-Americans. Plaintiff, however, never heard such statements himself and does not know the context in which the epithets were allegedly uttered. Pl. Dep. 88:12-89:21. Plaintiff admits that Privitera made no racially-insensitive comments after Plaintiff filed his grievance in April 2013. Def. SOMF ¶ 81.[5]

---

[5] Plaintiff contends that, even though Privitera did not make any further racist comments, he nonetheless continued to discriminate against Plaintiff by denying his vacation request in November 2013 and unevenly assigning work. As the Court found above, there is no evidence in the record to support Plaintiff's contention that these were race-based discriminatory or harassing acts.

While the Court finds Privitera's alleged statements to be racially-insensitive and contemptible, for the following reasons, the Court nonetheless agrees with Defendant that they do not rise to the level of a hostile work environment.

Plaintiff reported these statements in April 2013 and testified that, although he did not recall the exact dates, the statements likely occurred within roughly one to two years prior to his grievance. Pl. Dep. 80:22-81:3, 196:13-199:2. All such comments ceased in April 2013, although Privitera continued to supervise Plaintiff through his termination in May 2016. While Privitera's comments were certainly offensive, "not every comment, action or joke creates a hostile work environment. That is, '[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate . . . liability." Miller v. Thomas Jefferson Univ. Hosp., 565 F. App'x 88, 93-94 (3d Cir. 2014) (quoting Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001)). A handful of offhand comments--even if racially-insensitive--over the course of several years does not rise to the level of severe and pervasive discrimination, as required to establish a hostile work environment claim. See, e.g., Faragher, 524 U.S. at 788 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory

changes in the terms and conditions of employment."); Park v.
Sec'y U.S. Dep't of Veterans Affairs, 594 F. App'x 747, 751
("'Title VII' is not violated by the 'mere utterance of an . . .
epithet which engenders offensive feelings in an employee' or by
mere discourtesy or rudeness . . .") (quoting Abramson v.
William Paterson Coll. of N.J., 260 F.3d 265, 280 (3d Cir.
2001)); Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir.
2005) ("[W]e are mindful that 'offhanded comments, and isolated
incidents (unless extremely serious)' are not sufficient to
sustain a hostile work environment claim.").

Likewise, in assessing the severity of the comments, the
Court notes that Plaintiff was not the subject of any of the
comments.  Indeed, he was not even present when Privitera
allegedly used racial epithets.  "[C]omments referring to other
individuals that were merely overheard by [Plaintiff] are the
sorts of 'offhanded comments and isolated incidents' that the
Supreme Court in Faragher . . . cautioned should not be
considered severe or pervasive enough to constitute a hostile
work environment."  Caver, 420 F.3d at 263.  Moreover,
Privitera's comments were not physically threatening or
humiliating and there is no evidence that Privitera's comments
unreasonably interfered with Plaintiff's work performance.

Having assessed the totality of the circumstances, the
Court finds that the undisputed facts establish that Privitera's

comments and conduct, while offensive, did not rise to the level of pervasive and severe discrimination. The evidence simply does not support a finding that Plaintiff's workplace was so "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Morgan, 536 U.S. at 116 (internal quotations and citations omitted). There is no evidence from which a jury could determine that Plaintiff was subjected to a hostile work environment. Accordingly, even if Plaintiff's hostile work environment claims were not barred by the statute of limitations, summary judgment must nonetheless be granted as Plaintiff's hostile work environment claims under Title VII and NJLAD (Counts I, III).

### iii. Faragher-Ellerth Defense

Even if Plaintiff could establish a hostile work environment, Defendant contends that it is nonetheless protected from respondeat superior liability on the basis of the Faragher-Ellerth defense. The affirmative defense applies only when the plaintiff employee has not suffered a tangible employment action. Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 328 (3d Cir. 2015) (quoting Pa. State Police v. Suders, 542 U.S. 129, 143 (2004)). In such cases, the Faragher-Ellerth defense protects an employer from liability where "the employer

31

'exercised reasonable care to avoid harassment and to eliminate it when it might occur' and the complaining employee 'failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." Jones, 796 F.3d at 328 (quoting Faragher, 524 U.S. at 805).

As a preliminary matter, the defense is available to NAC as Plaintiff did not suffer a "tangible employment action" as a result of any of Privitera's alleged discriminatory comments or actions. Id. "The Supreme Court has defined a 'tangible employment action' as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (quoting Ellerth, 524 U.S. at 761). As the Court previously noted above, there is no evidence in the record that even suggests that Plaintiff has suffered any change in his employment status, let alone a significant change, that could constitute a tangible employment action.

Having established that the defense is available to NAC, the Court next considers whether NAC satisfies the two prongs of the Faragher-Ellerth defense and, for the following reasons, finds that it does. As for the first prong, the Court finds that NAC "exercised reasonable care to avoid harassment and to

eliminate it when it might occur." <u>Faragher</u>, 524 U.S. at 805.

NAC promulgated anti-discrimination and anti-harassment

policies, which explicitly prohibit race-based harassment and

direct employees to report any harassment or discrimination to

its Human Resources Department.  Def. SOMF ¶¶ 5-6.

Additionally, when Plaintiff filed his first union grievance in

April 2013, NAC promptly commenced an investigation into

Plaintiff's allegations.  As part of the investigation,

Johansen, NAC's Human Resources Generalist, interviewed five

employees and made specific findings, which were reported to

Plaintiff.  She also disciplined Privitera based upon her

findings.  Def. SOMF ¶¶ 73-76, 78-80.  Privitera's

racially-insensitive comments ceased after Plaintiff filed the

grievance.  <u>Id.</u> ¶ 81.

    This is sufficient to satisfy the first prong of the

defense.  <u>Jones</u>, 796 F.3d at 329 (holding that defendant

employer satisfied <u>Faragher-Ellerth</u> defense where employer

"conducted an investigation, made findings, developed a 'plan of

action,' required [alleged harasser] to attend a counseling

session, and gave him a demerit on his evaluation.").  Plaintiff

has identified no disputes of fact in the record that suggest

that Defendant's investigation was anything but thorough.

Instead, it appears that Plaintiff simply disagrees with the

investigation's conclusion.  Additionally, contrary to

Plaintiff's assertion, see Pl. Opp. Br. at 21 [Docket No. 23], a defendant is not required to terminate an alleged harasser in order to satisfy this prong. See Jones, 796 F.3d at 329 ("[A] showing that discipline was imposed is not required to prove that an employer's remedial action was adequate.").

Furthermore, the undisputed record demonstrates that Plaintiff "failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." Faragher, 524 U.S. at 805. Plaintiff first complained to NAC about Privitera's alleged racist comments in April 2013. By his own admission, however, the incidents occurred well before he reported them to NAC in his April 2013 grievance, perhaps even years earlier. Pl. Dep. 80:22-81:3, 196:13-199:2. He concedes that he did not report any of these comments to Human Resources or any NAC supervisor, including Nieves, before he filed his April 2013 grievance, even though he was aware of NAC's anti-harassment policies and knew that he had the ability to report the alleged harassment to NAC's Human Resources Department. Def. SOMF ¶¶ 14-15, 66. Plaintiff testified that he did not raise his concerns earlier because he thought nothing would be done if he complained. Id. ¶ 67. There is no evidence in the record to suggest that Plaintiff's belief was reasonable or anything beyond pure speculation.

Under these circumstances, the Court cannot find that Plaintiff acted with reasonable care to take advantage of NAC's safeguards and prevent further harms.  See Jones, 796 F.3d at 329 (holding that defendant employer satisfied second prong of Faragher-Ellerth defense where plaintiff alleged that she suffered years of harassment, yet did not make any complaints, even though she knew that she could report complaints to employer's EEO office); see also Amati v. U.S. Steel Corp., 304 F. App'x 131, 134 (3d Cir. 2008) (affirming district court's determination that defendant satisfied Faragher-Ellerth defense where plaintiff did not report harassment until months after harassment occurred, despite the fact that she was aware of available reporting procedures).  The Court finds that Defendant has established that it is shielded from liability by the Faragher-Ellerth defense.  Accordingly, for this additional reason, summary judgment is granted on Plaintiff's hostile work environment claims under Title VII and NJLAD (Counts I, III).

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.  Plaintiff's Complaint is dismissed with prejudice.  An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2017